

## NAEGELI
### DEPOSITION & TRIAL

**(800) 528 - 3335**
**NAEGELIUSA.COM**

*Nationwide*

**COURT REPORTING**

**LEGAL VIDEOGRAPHY**

**REMOTE DEPOSITIONS**

**TRIAL PRESENTATION**

**LEGAL TRANSCRIPTION**

**COPYING AND SCANNING**

**LANGUAGE INTERPRETERS**

*Powerful*
LITIGATION SUPPORT

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MISSOURI

CENTRAL DIVISION


NICHOLAS HUNTER,

     Plaintiff,

vs.               CASE NO. 2:24-CV-04081-WJE

MYRON WOODSON, and

CITY OF STURGEON, MISSOURI,

     Defendants.

_____


REMOTE STREAMING DEPOSITION OF


PATRICK "SETH" TRUESDELL 30(b)(6)


TAKEN ON

FRIDAY, JUNE 6, 2025

1:28 P.M.


VESSELL BRIDGES MURPHY

3901 SOUTH PROVIDENCE ROAD, SUITE D

COLUMBIA, MISSOURI 65203



## NAEGELI
### DEPOSITION & TRIAL
**(800) 528-3335**
**NAEGELIUSA.COM**

REMOTE APPEARANCES

Appearing on behalf of the Plaintiff:

ERIC C. CRINNIAN, ESQUIRE

Crinnian Law Offices

9212 North Garfield Avenue

Kansas City, Missouri 64155

(816) 459-0649

eric@crinnian.law

DANIEL J. KOLDE, ESQUIRE

Kolde Law Offices

P.O. Box 440344

Saint Louis, Missouri 63144

(636) 675-5383

Daniel.Kolde.Law@gmail.com

REMOTE APPEARANCES (CONTINUED)

Appearing on behalf of the Defendant, Myron Woodson:

JACK FLEMING, ESQUIRE

Vessell Bridges Murphy Law

3901 South Providence Road, Suite D

Columbia, Missouri 65203

(573) 777-4488

Jack.Fleming@VBMLaw.com

Appearing on behalf of Defendant, City of Sturgeon:

WAYNE M. JORDAN, III, ESQUIRE

Newman, Comley & Ruth, P.C.

601 Monroe Street, Suite 301

Jefferson City, Missouri 65101

(573) 634-2266

JordanW@NCRpc.com

Laura@NCRPC.com

Also present:

Vincent Guerrera, NDT Technician

EXAMINATION INDEX

PAGE

EXAMINATION BY MR. CRINNIAN                              7

EXHIBIT INDEX

EXHIBIT                                              PAGE


41    CITY OF STURGEON SECTION 110         15

42    CITY OF STURGEON SECTION 200         17

43    PERSONNEL POLICY                     19

REMOE STREAMING DEPOSITION OF

PATRICK "SETH" TRUESDELL 30(b)(6)

TAKEN ON

FRIDAY, JUNE 6, 2025

1:28 P.M.


THE REPORTER:  We're going on the record, 1:28 p.m.

Mr. Truesdell, will you please raise your right hand.  Do you affirm under penalty of perjury that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE DEPONENT:  I do.

THE REPORTER:  Thank you.

Will each attorney please state their name and whom they represent.

MR. CRINNIAN:  Eric Crinnian, on behalf of Plaintiff Nicholas Hunter.

MR. KOLDE:  Daniel Kolde, for Plaintiff Nicholas Hunter.

MR. FLEMING:  Jack Fleming, for Defendant Myron Woodson.

MR. JORDAN:  Wayne Jordan, on behalf of Defendant City of Sturgeon, Missouri.

THE REPORTER:  Thank you.

Counsel, please proceed.

SETH TRUESDELL, having been first duly affirmed to tell the truth, was examined, and testified as follows:

EXAMINATION

BY MR. CRINNIAN:

Q. Mayor Truesdell, my name is Eric Crinnian. I'm the other attorney for Mr. Hunter. I want to echo what Mr. Kolde said earlier. Thank you for being here and thank you for your candor. Like I said, we're going to try to get through this quickly. This portion of your deposition, unlike your personal deposition, you're here as a representative of the City. Do you understand that?

A. Yes.

Q. Okay. So it's called a corporate representative deposition. And we provided a list of topics to your attorney to provide to you. Do you recall receiving that?

A. Yes.

Q. Okay. Wonderful. I'm only going to be asking you about the things that are on here, and I'm not going to be asking you about all of the things because we've gotten a lot of them already taken care of. I do want to recap, first of all, on

Topic number 1, the organization of the City government and the police responsibility, just to make sure I understand it. Like you said earlier, the mayor is responsible for kind of the everyday operations and is directly responsible for the police department; is that correct?

A.    I believe so.  Yes.

Q.    And you would have a subordinate underneath you, either a sergeant or a lieutenant, and then they would be responsible for the department -- the rest of the department under them?

A.    Yes.

Q.    And to your understanding, the Board of Alderman is responsible for essentially the legislative and the -- the overall operation of the government, correct?

A.    Yes.

Q.    Okay.  Currently, the City of Sturgeon does not have a police force; is that correct?

A.    That is correct.

Q.    Okay.  After the prior chief -- I believe it was Halderman?

A.    Yes.

Q.    Had -- he had a lawsuit, correct?

A.    That is correct.

Q.    And then there was no more police department after that, correct?

A.    No.  We -- we did have a police department after Halderman.

Q.    Oh, okay.  And was there somebody between Halderman and Thomas Crawford?

A.    Yes.

Q.    Oh, okay.  Who was that; if you recall?

A.    It was before my time, but his name was -- we just talked about this today.  Derrick --

Q.    If you remember it later, remind me.  We'll --

A.    Yes.

Q.    We'll catch up on that.  So after Halderman and this other person, Derrick somebody, Sergeant Crawford became the sergeant for the department, correct?

A.    He became a police officer first, and then we promoted him to Sergeant.

Q.    Okay.  And at that time, sometime after is when he hired my -- the -- the City hired Myron Woodson?

A.    Yes.  So when -- when he wanted to bring Myron on, in order for us to bring Myron on, he had to have a supervisor, so we promoted him to Sergeant

so Myron could join the service.

Q.   Okay.  Do you have any idea -- actually, scratch that.  Cancel that.  The structure of the City then, prior to you becoming the mayor, Kevin Abrahamson would have been the mayor and would have been over the police department, and then it would have been Sergeant Crawford and Officer Myron Woodson, correct?

A.   Yes.  When we did have somebody come in and -- and help a little bit with the -- somebody from POST come in and help with some of the computer stuff and looking on there, and the CFO of the police department was actually still Steve Crosswhite, the former mayor.

Q.   Okay.

A.   And it never changed from Steve Crosswhite to Kevin Abrahamson to me.  I don't -- I -- I don't know, to this day, if I'm actually the CFO of the police department or not.

Q.   So it sounds like the department has had some issues just getting the paperwork kind of caught up and on --

A.   That is --

Q.   -- on time --

A.   -- correct.

Q.    -- with everything?  Okay.

THE REPORTER:  What was the end of your question, please?

MR. CRINNIAN:  I'm sorry.  Getting the paperwork caught up and on time.

BY MR. CRINNIAN:

Q.    And following Mayor Abrahamson's resignation, you become the mayor pro-tem and then essentially take that spot as the -- the chief executive of the agency, right?

A.    That is correct.

Q.    Okay.  All right.  We'll move on to the third topic.  Have you ever heard the term fourth-class city?

A.    Yes.

Q.    Okay.  You understand that that is essentially a statutory definition?

A.    Yes.

Q.    Okay.  Do you know what the limits and responsibilities -- or scratch that.  Do you know how the class of cities are broken up statutorily?

A.    Not really, no.

Q.    Would it make sense if I told you that they were typically broken up by things like size?

A.    Yes.

Q. Okay. So when I say Sturgeon is a fourth-class city, I -- I just mean statutorily, it's under a certain size?

A. Yes.

Q. And with that classification of -- of government, it has a specific political body, the mayor and the Board of Alderman, correct?

A. Uh-huh. Yes.

Q. Those are found under Chapter 79 of the Revised Statutes of Missouri, and I just want to go through and see if this comports with your knowledge. Is it your understanding that the mayor, under Missouri law, is responsible for enforcing the laws of the City?

A. Yes.

Q. Okay. Is it your understanding that under Chapter 79 of the Revised Statutes of Missouri, that the board can compel records and witnesses to appear in front of the board?

A. Yes.

Q. Is it your understanding, pursuant to Chapter 79, that the City and the Board of Alderman has the power to appoint the City attorney of their own choosing?

A. Yes.

Q.   Okay.  Now, since you've become mayor and are responsible for the police department, have you become familiarized with Chapter 590 of the Missouri Statutes that governs policing?

A.   Somewhat, yes.

Q.   Okay.  And that's a -- that's a fair way to put that.  The -- are you familiar with the recordkeeping that the Missouri Department of Public Safety/the Police Officer Standards and Training keep with regard to specific officers?

A.   I'm learning a little bit at a time, but no, I -- I do not know that.

Q.   Okay.  Have you ever been informed that the -- that POST/Missouri Department of Public Safety makes information available to, for example, municipalities when they're getting ready to hire an officer?

A.   No, I did not know that.

Q.   Are you familiar with the provisions of Chapter 590 that requires a law enforcement agency that has information about an officer's unfitness for duty to report that information to POST?

A.   No.

Q.   And we talked -- or you spoke to Mr. Kolde during your -- your individual deposition about the

590.502 investigations, right?  And you heard about that for the first time kind of once all this happened?

A.   Yes.

Q.   Okay.  Do you know what the time frame is on how long a municipality or an agency has to complete an investigation once it's been invoked?

A.   I do not.  I do know I had to file an extension on this one.

Q.   Okay.  Do you know who you filed an extension with?

A.   Jackie had paperwork, and I signed it.  So I -- I don't know who it was.  I'm assuming that was with POST.  I --

Q.   I would presume so.

A.   POST did come in and collect a bunch of information on all this.  So like I said, I'm learning as I go here.

Q.   Did POST actually come in, like, did you meet with anybody from POST?

A.   Yes.  We met with somebody from POST, and then we, I believe, sent all the files that they asked for.  And if you told me that guy's name, I'd say yes, I know that guy.

Q.   Would it be Jeffery Collins by chance?

A.   Yes, it was.

Q.   **All right.  There we go.**

THE REPORTER:  What was the name, please?

MR. CRINNIAN:  Jeffrey Collins.

MR. JORDAN:  So are we in -- the next one's 41?

MR. CRINNIAN:  The next one's 41.

BY MR. CRINNIAN:

Q.   **Okay.  Mayor Truesdell, I'm handing you what I have marked as Plaintiff's Exhibit 41.  If you'll please --**

THE REPORTER:  Exhibit 41.

(WHEREUPON, Exhibit 41 was marked for identification.)

BY MR. CRINNIAN:

Q.   **And that is Sturgeon Document 1507.  If you'll please take a look at that for me and tell me if you recognize it.**

A.   I do.

Q.   **And can you tell me what these appear to be.**

A.   These are the ordinances of the City of Sturgeon.

Q.   **Okay.**

THE REPORTER:  Last sentence, please.

MR. CRINNIAN:  From the answer?

THE DEPONENT:  Yeah.  Ordinances from the City of Sturgeon.

BY MR. CRINNIAN:

Q.    All right.  And if you look halfway down the page, it says, "Section 110.120, Board of Alderman may compel attendance of witnesses."  Do you see that?

A.    Yes.

Q.    And would that match up with what we talked about earlier with regard to the Revised Statutes of Missouri?

A.    Yes.

Q.    If you look down at Section 110.140, it says, "The mayor shall have the power to enforce the law."  Do you see that?

A.    Yes.

Q.    And it says, "The mayor shall be active and vigilant enforcing all laws and ordinances for the government of the City, and he/she shall cause all subordinate officers to be dealt with promptly for any neglect or violation of duty."  Is that correct?

A.    Yes.

Q.    And does that appear to comport with the

Missouri statutory language we discussed earlier?

A. It does.

Q. And that should be the end of that document.

I am now handing you what I'm marking as Exhibit 42. This is Sturgeon Document 1510. And again, if you'll please look at those and let me know if you recognize them.

THE REPORTER: Exhibit 42.

(WHEREUPON, Exhibit 42 was marked for identification.)

THE DEPONENT: Yes, I recognize them.

BY MR. CRINNIAN:

Q. And is this -- does this appear to be the municipal ordinances with regard to the police department?

A. Yes.

Q. Yes, it does?

A. Uh-huh.

Q. Under 200.010, Size of the Police Force, the mayor and the Board of Alderman get to designate the size of the police force, correct?

A. Yes.

Q. Any such police officer may -- so appointed may resign his or her position by giving

30-days notice in writing to the Board of Alderman, correct?

A. Yes.

Q. Subsection -- Section -- I'm sorry. Subsection B, under 200.010, "Police officers shall be conservators of the peace and shall be active and vigilant in the preservation of good order within the City of Sturgeon, Missouri" is that correct?

A. Yes.

Q. Section 200.020, Composition and Organization. Subsection A says that, "The Board of Alderman may appoint one or more lieutenants and one or more sergeants" everybody else is a patrolman, correct?

A. Yes.

Q. There's a little 1 there, "Immediate supervision of all reserve police officers" or I'm sorry, "A member of the police force appointed as lieutenant or sergeant shall have the following additional responsibilities and duties. One, immediate supervision of all reserved police officers of the police Department" is that correct?

A. Yes.

Q. "And two, overseeing training of all new police officers of the police department" is that

correct?

A.   That is correct.

Q.   I'm going to hand you what I am marking as Plaintiff's Exhibit 43.

THE REPORTER:  Exhibit 43.

(WHEREUPON, Exhibit 43 was marked for identification.)

BY MR. CRINNIAN:

Q.   For the record, this is Sturgeon Document 189 through 193.  If you'll just take a look at that and tell me if you recognize that.

A.   Yes.  I recognize this.

Q.   Okay.  What is this?

A.   The Sturgeon personnel policy.

Q.   And to your knowledge, is this the personnel policy that was in effect at the time that Myron Woodson was employed?

A.   Yes.

Q.   On the front page here, Subsection C, do you see where it says, "At-will employment?"

A.   I do.

Q.   Do you know what at-will employment is?

A.   I do.

Q.   And what is at-will employment, to your understanding?

A.    That you can fire anybody for any reason.

Q.    Okay.  If you turn to the second, I'm sorry, third page.  Do you see towards the top of the page where it says, "Probation" in bold?

A.    Yes.

Q.    Under Subsection B, it says, "Police officers shall satisfactorily complete a 365-day probationary period before being granted permanent employee status" is that correct?

A.    Yes.

Q.    "Any employee terminated during the probationary period shall be considered a termination for cause." Is that the correct and accurate reading of that?

A.    Yes.

Q.    Okay.  Turn to the next page.  We're looking under the section for Employment Rules and Regulations. Do you see Subsection A, Employee's Responsibilities?

A.    Yes.

Q.    Subsection 1, "It is the duty of every employee to attempt to correct any fault and performance when called to their attention and to make every effort to avoid conflict with the City's rules and regulations" is that correct?

A.    Yes.

Q.    And number 2, "It is the duty of every supervisor to discuss improper or inadequate performance with the employee in order to correct the deficiencies and to avoid the need to exercise disciplinary action.

Discipline shall be, whenever possible, of an increasingly progressive nature.  The step of progression being one, verbal warning, two written warning, three suspension, and four dismissal."  Is that accurate?

A.    Yes.

Q.    And Subsection B, Grounds for Action, these are the bases for disciplinary action according to this policy, correct?

A.    Yes.

Q.    The first one is deliberate incompetence; is that correct?

A.    Yes.

Q.    What would you consider deliberate incompetence?

A.    I don't know the dictionary -- the -- the dictionary's definition of it, but I wouldn't even really know how to describe that.  Incompetence, doing something inaccurate or wrong without the

knowledge -- without their knowledge or --

Q. Okay.

A. -- education or understanding.

Q. That's fine. I'm just asking for your understanding of it because it's -- it's oddly worded to me, too.

A. Yeah.

Q. So that's why -- I don't know how you're deliberately incompetent, but that's what I want to try to find out. Subsection 3, Acts of Insubordination, do you see that?

A. Yes.

Q. What is insubordination?

A. Doing the opposite of what your supervisor told you to do.

Q. Okay. And that is an act of -- a -- a basis for disciplinary action under this policy?

A. Yes.

Q. Paragraph, I'm sorry, Subsection 7, "Acts of misconduct while on duty" is also a grounds for action, correct?

A. Yes.

Q. Number 9, "Falsification of any information required by the City" is also a grounds for action; is that correct?

A.   Yes.

Q.   Okay.  If you turn to the next page, number 14 at the top, "Causing or contributing to a hostile work environment" is also a cause for action, correct?

A.   Yes.

Q.   Below, it lists some of the actions that the City can take.  Do you see that?

A.   Yeah.

Q.   One of the -- the first one is suspension; is that correct?

A.   Yes.

Q.   And it says, "The employee may be suspended from responsibilities with or without pay for a period of one to ten days while the cause of charges are resolved" correct?

A.   Correct.

Q.   Let's skip down two paragraphs to Dismissal. "An employee may be dismissed for cause if the department head considers that the good of the City will be served by such action." Is the mayor the head of the police department, for the purposes of this paragraph?

A.   I don't know, honestly.

Q.   You just -- you genuinely just don't know

--

A.   I just --

Q.   -- either way?

A.   Yeah.  I just -- I honestly don't know.

Q.   Okay.  And it continues, "All such actions shall be fully documented and reviewed and approved by the proper officials and supervisory personnel prior to such action."  Do you see that?

A.   Yes.

Q.   Do you believe that any actions, for example against Officer Woodson, according to this policy, should have been documented, reviewed and approved by the mayor and/or the Board of Alderpersons?

A.   Yes.

Q.   Okay.  Are you aware of who wrote the police department's policy manual?

A.   No.

Q.   No?  Have you ever read the policy manual?

A.   The -- the police department's, no.

Q.   Okay.  Do you know if that -- I know that Sturgeon doesn't currently have a functioning police department.  Is that policy still in effect until the time that it's rewritten?

A.   Yes.  Yes.

Q.   Okay.  The last two topics.  Number 1 -- number 9 on my list was the investigation into the -- the May 19th shooting.  I believe that you and Mr. Kolde covered that pretty well earlier.

I just want to clarify for the purpose of this.  Your understanding is that the City did not actually complete an investigation into the shooting itself, correct?

A.   Yes, that's correct.

Q.   And then finally, Paragraph 10, the agreement with Officer Woodson, as you already testified, you and the Board of Alderpersons voted to approve his resignation agreement, correct?

A.   Yes.

Q.   And the statement that you read into the record specifically said that upon completion and review of the administrative investigation and upon recommendation by the City attorney, that you determined that there was no misconduct committed in regard to that 5/19 shooting, correct?

A.   That's correct.

Q.   And we now know that the investigation into the 5/19 shooting was not done?

A.   That is correct.

Q.   With regard to -- we talked about

disciplinary action -- bases for disciplinary action.  We talked about insubordination.  You mentioned during your individual deposition that Officer Woodson did not bring the squad car back, despite your repeated requests, correct?

A.   That is correct.

Q.   Would that be insubordination?

A.   It would be, in my eyes.  Yes.

Q.   Okay.  Do you recall when Officer Woodson returned his uniform and any other materials to the City?

A.   Yes.  That was on -- it was a pre -- I don't know the exact date.  It was scheduled between Jackie and Myron and me to be all there at the same time, and it was sometime around that October --

Q.   So it was sometime right around the time the settlement agreement was signed?

A.   Yes.

Q.   Okay.  Had you requested the uniform be returned prior to that?

A.   Not the uniform, no.

Q.   Just the car?

A.   Just the car.

Q.   Did -- was there any other materials that were kept?

A.   I'm assuming all his gear.  He had all his gear at that time.

MR. CRINNIAN:  Okay.  Well, I've got no -- no more questions.

MR. FLEMING:  No questions.

MR. JORDAN:  No questions.

You heard my instruction on being able to review the transcript and/or waiving signature. What would you like to do on behalf of the City?

THE DEPONENT:  I'll waive.

THE REPORTER:  Okay.  Mr. Crinnian, would you like to order the original?

MR. CRINNIAN:  Yes, please.

THE REPORTER:  Thank you.

Mr. Kolde, would you like to order a copy?

MR. KOLDE:  No, I'm good.  Thank you.

THE REPORTER:  Thank you.

Mr. Fleming, would you like to order a copy?

MR. FLEMING:  Yeah.  I'll take an eTran copy, please.

THE REPORTER:  Mr. Jordan, would you like to order a copy?

MR. JORDAN:  PDF.  Did we have any exhibits? With the exhibits attached.

THE REPORTER:  Yes.

All right.  Please stand by.  We're going off the record, 2:49.

(WHEREUPON, the deposition of SETH TRUESDELL was concluded at 2:49 p.m.)

CERTIFICATE

I, Brittany Douglas, do hereby certify that I reported all proceedings adduced in the foregoing matter and that the foregoing transcript pages constitutes a full, true and accurate record of said proceedings to the best of my ability.

I further certify that I am neither related to counsel or any party to the proceedings nor have any interest in the outcome of the proceedings.

IN WITNESS HEREOF, I have hereunto set my hand this 10th day of July, 2025.

Brittany Douglas, #4235

CORRECTION SHEET

Deposition of: Patrick Truesdell    Date: 6/6/25

Regarding: Hunter vs. Woodson et al.

Reporter: Douglas/Seaman

_____

Please make all corrections, changes or
clarifications to your testimony on this sheet,
showing page and line number.  If there are no
changes, write "none" across the page.  Sign this
sheet and the line provided.

Page  Line  Reason for Change

____  ____  _____

____  ____  _____

____  ____  _____

____  ____  _____

____  ____  _____

____  ____  _____

____  ____  _____

____  ____  _____

____  ____  _____

____  ____  _____

____  ____  _____

____  ____  _____

        Signature: _____

                        Patrick Truesdell 30(b)(6)

DECLARATION

Deposition of: Patrick Truesdell    Date: 06/06/2025

Regarding: NICHOLAS HUNTER vs MYRON WOODSON ET AL.

Reporter:  Brittany Douglas

_____


I declare under penalty of perjury the following to be

true:


I have read my deposition and the same is true and

accurate save and except for any corrections as made

by me on the Correction Sheet herein.


Signed at _____, _____

on the _____ day of _____, 20_____.



Signature: _____

Patrick Truesdell

**Exhibits**

**EX041 CITY OF S TURGEON SECTI ON 110**  15:10,12, 13

**EX042 CITY OF S TURGEON SECTI ON 200**  17:6,9,10

**EX043 PERSONN EL POLICY**  19:4, 5,6

---

**1**

**1**  8:1 18:16 20:21 25:1

**10**  25:10

**110.120**  16:6

**110.140**  16:14

**14**  23:3

**1507**  15:16

**1510**  17:6

**189**  19:10

**193**  19:10

**19th**  25:3

**1:28**  6:8

---

**2**

**2**  21:2

**200.010**  17:20 18:5

**200.020**  18:10

**2:49**  28:3

---

**3**

**3**  22:10

**30-days**  18:1

**365-day**  20:7

---

**4**

**41**  15:6,7,10,12, 13

**42**  17:6,9,10

**43**  19:4,5,6

---

**5**

**5/19**  25:20,23

**590**  13:3,20

**590.502**  14:1

---

**7**

**7**  22:19

**79**  12:9,17,22

---

**9**

**9**  22:23 25:2

---

**A**

**Abrahamson**  10:5,17

**Abrahamson's**  11:7

**accurate**  20:14 21:11

**act**  22:16

**action**  21:6,13,14 22:17,21,25 23:5, 21 24:8 26:1,2

**actions**  23:7 24:5, 10

**active**  16:18 18:6

**Acts**  22:10,19

**additional**  18:20

**administrative**  25:17

**affirm**  6:10

**affirmed**  7:2

**agency**  11:10 13:20 14:6

**agreement**  25:11, 13 26:17

**Alderman**  8:14 12:7,22 16:7 17:21 18:1,12

**Alderpersons**  24:14 25:12

**and/or**  24:13 27:8

**appoint**  12:23 18:12

**appointed**  17:25 18:18

**approve**  25:13

**approved**  24:6,13

**assuming**  14:13 27:1

**at-will**  19:20,22, 24

**attached**  27:25

**attempt**  20:22

**attendance**  16:7

**attention**  20:23

**attorney**  6:15 7:8, 18 12:23 25:18

**avoid**  20:24 21:5

**aware**  24:16

---

**B**

**back**  26:4

**bases**  21:14 26:1

**basis**  22:17

**behalf**  6:17,23 27:9

**bit**  10:10 13:11

**board**  8:13 12:7, 18,19,22 16:6 17:21 18:1,11 24:13 25:12

**body**  12:6

**bold**  20:4

**bring**  9:23,24 26:4

**broken**  11:21,24

**bunch**  14:16

---

**C**

**called**  7:16 20:23

**Cancel**  10:3

**candor**  7:10

**car**  26:4,22,23

**care**  7:25

**catch**  9:14

**caught**  10:22 11:5

**Causing** 23:3

**CFO** 10:12,18

**chance** 14:25

**changed** 10:16

**Chapter** 12:9,17, 22 13:3,20

**charges** 23:16

**chief** 8:21 11:9

**choosing** 12:24

**cities** 11:21

**city** 6:24 7:14 8:1, 18 9:21 10:4 11:14 12:2,14,22, 23 15:22 16:3,20 18:8 22:24 23:8, 21 25:6,18 26:11 27:9

**City's** 20:24

**clarify** 25:5

**class** 11:14,21 12:2

**classification** 12:5

**collect** 14:16

**Collins** 14:25 15:4

**committed** 25:19

**compel** 12:18 16:7

**complete** 14:7 20:7 25:7

**completion** 25:16

**comport** 16:25

**comports** 12:11

**Composition** 18:10

**computer** 10:11

**conflict** 20:24

**conservators** 18:6

**considered** 20:12

**considers** 23:20

**continues** 24:5

**contributing** 23:3

**copy** 27:15,19,21, 23

**corporate** 7:16

**correct** 8:6,16,19, 20,24,25 9:2,17 10:8,25 11:11 12:7 16:23 17:22 18:2,8,14,22 19:1,2 20:9,13, 22,25 21:4,15,18 22:21,25 23:5,11, 16,17 25:8,9,13, 20,21,24 26:5,6

**Counsel** 7:1

**covered** 25:4

**Crawford** 9:6,16 10:7

**Crinnian** 6:17 7:6, 7 11:4,6 15:4,7,8, 15 16:1,4 17:13 19:8 27:3,11,13

**Crosswhite** 10:14,16

**D**

**Daniel** 6:19

**date** 26:13

**day** 10:18

**days** 23:15

**dealt** 16:21

**Defendant** 6:21, 24

**deficiencies** 21:5

**definition** 11:17 21:23

**deliberate** 21:17, 20

**deliberately** 22:9

**department** 8:6, 11 9:2,3,17 10:6, 13,19,20 13:2,8, 14 17:16 18:22, 25 23:20,22 24:23

**department's** 24:17,20

**DEPONENT** 6:13 16:2 17:12 27:10

**deposition** 7:12, 13,17 13:25 26:3

**Derrick** 9:10,15

**describe** 21:24

**designate** 17:21

**determined** 25:19

**dictionary** 21:22

**dictionary's** 21:23

**directly** 8:5

**disciplinary** 21:6, 14 22:17 26:1

**Discipline** 21:7

**discuss** 21:3

**discussed** 17:1

**dismissal** 21:10 23:19

**dismissed** 23:19

**document** 15:16 17:4,6 19:9

**documented** 24:6,12

**duly** 7:2

**duties** 18:20

**duty** 13:22 16:22 20:21 21:2 22:20

**E**

**earlier** 7:9 8:3 16:11 17:1 25:4

**echo** 7:9

**education** 22:3

**effect** 19:16 24:23

**effort** 20:24

**employed** 19:17

**employee** 20:9, 11,22 21:4 23:13, 19

**Employee's** 20:18

**employment** 19:20,22,24 20:17

**end** 11:2 17:3

**enforce** 16:15

**enforcement** 13:20

enforcing 12:13 16:19

environment 23:4

Eric 6:17 7:7

essentially 8:14 11:9,17

etran 27:20

everyday 8:4

exact 26:13

EXAMINATION 7:5

examined 7:3

executive 11:10

exercise 21:5

Exhibit 15:10,12, 13 17:6,9,10 19:4,5,6

exhibits 27:25

extension 14:9, 11

eyes 26:8

### F

fair 13:6

Falsification 22:23

familiar 13:7,19

familiarized 13:3

fault 20:22

file 14:8

filed 14:10

files 14:22

finally 25:10

find 22:10

fine 22:4

fire 20:1

Fleming 6:21 27:5,18,20

force 8:19 17:20, 22 18:18

found 12:9

fourth- 11:13 12:1

frame 14:5

front 12:19 19:19

fully 24:6

functioning 24:22

### G

gear 27:1,2

genuinely 23:25

give 6:11

giving 17:25

good 18:7 23:20 27:16

government 8:2, 16 12:6 16:20

governs 13:4

granted 20:8

grounds 21:13 22:20,24

guy 14:24

guy's 14:23

### H

Halderman 8:22 9:4,6,15

halfway 16:5

hand 6:10 19:3

handing 15:9 17:5

happened 14:3

he/she 16:20

head 23:20,22

heard 11:13 14:1 27:7

hire 13:16

hired 9:21

honestly 23:24 24:4

hostile 23:4

Hunter 6:18,20 7:8

### I

idea 10:2

identification 15:14 17:11 19:7

improper 21:3

inaccurate 21:25

inadequate 21:3

incompetence 21:17,21,24

incompetent 22:9

increasingly 21:8

individual 13:25 26:3

information 13:15,21,22 14:17 22:24

informed 13:13

instruction 27:7

insubordination 22:11,13 26:2,7

investigation 14:7 25:2,7,17,22

investigations 14:1

invoked 14:7

issues 10:21

### J

Jack 6:21

Jackie 14:12 26:14

Jeffery 14:25

Jeffrey 15:4

join 10:1

Jordan 6:23 15:5 27:6,22,24

### K

Kevin 10:4,17

kind 8:4 10:21 14:2

knowledge 12:12 19:15 22:1

Kolde 6:19 7:9 13:24 25:4 27:15, 16

### L

language 17:1

law 12:13 13:20 16:16

laws 12:14 16:19

lawsuit 8:24

learning 13:11 14:18

legislative 8:15

lieutenant 8:9 18:19

lieutenants 18:12

limits 11:19

list 7:17 25:2

lists 23:7

long 14:6

lot 7:24

**M**

make 8:3 11:23 20:24

makes 13:15

manual 24:17,19

marked 15:10,13 17:10 19:6

marking 17:5 19:3

match 16:10

materials 26:10, 24

mayor 7:7 8:4 10:4,5,14 11:7,8 12:7,12 13:1 15:9 16:15,18 17:21 23:22 24:13

meet 14:20

member 18:18

mentioned 26:3

met 14:21

misconduct 22:20 25:19

Missouri 6:24 12:10,13,17 13:3, 8 16:12 17:1 18:8

move 11:12

municipal 17:15

municipalities 13:16

municipality 14:6

Myron 6:22 9:21, 24 10:1,7 19:17 26:14

**N**

nature 21:8

neglect 16:22

Nicholas 6:18,20

notice 18:1

number 8:1 21:2 22:23 23:3 25:1,2

**O**

October 26:15

oddly 22:5

officer 9:18 10:7 13:9,17 17:24 24:11 25:11 26:4, 9

officer's 13:21

officers 13:10

16:21 18:5,17,22, 25 20:7

officials 24:7

one's 15:6,7

operation 8:15

operations 8:5

opposite 22:14

order 9:24 18:7 21:4 27:12,15,18, 23

ordinances 15:22 16:2,19 17:15

organization 8:1 18:11

original 27:12

overseeing 18:24

**P**

p.m. 6:8

paperwork 10:21 11:5 14:12

paragraph 22:19 23:23 25:10

paragraphs 23:18

patrolman 18:13

pay 23:14

PDF 27:24

peace 18:6

penalty 6:10

performance 20:23 21:4

period 20:8,12 23:15

perjury 6:10

permanent 20:8

person 9:15

personal 7:13

personnel 19:14, 16 24:7

Plaintiff 6:18,19

Plaintiff's 15:10 19:4

police 8:2,6,19 9:1,3,18 10:6,13, 19 13:2,9 17:15, 20,22,24 18:5,17, 18,21,22,25 20:6 23:22 24:17,20, 22

policing 13:4

policy 19:14,16 21:15 22:17 24:12,17,19,23

political 12:6

portion 7:12

position 17:25

POST 10:11 13:22 14:14,16, 19,20,21

POST/MISSOURI 13:14

power 12:23 16:15

pre 26:12

preservation 18:7

presume 14:15

pretty 25:4

prior 8:21 10:4 24:8 26:20

pro-tem 11:8

Probation 20:4

probationary 20:8,12

proceed 7:1

progression 21:9

progressive 21:8

promoted 9:19,25

promptly 16:21

proper 24:7

provide 7:18

provided 7:17

provisions 13:19

Public 13:8,14

purpose 25:5

purposes 23:23

pursuant 12:21

put 13:7

**Q**

question 11:3

questions 27:4,5, 6

quickly 7:12

**R**

raise 6:9

read 24:19 25:15

reading 20:14

ready 13:16

reason 20:1

recall 7:19 9:8 26:9

recap 7:25

receiving 7:19

recognize 15:18 17:8,12 19:11,12

recommendation 25:18

record 6:7 19:9 25:16 28:3

recordkeeping 13:8

records 12:18

regard 13:10 16:11 17:15 25:20,25

regulations 20:18,25

remember 9:11

remind 9:11

repeated 26:5

report 13:22

REPORTER 6:7, 14,25 11:2 15:3, 12,25 17:9 19:5 27:11,14,17,22 28:1

represent 6:16

representative 7:14,17

requested 26:19

requests 26:5

required 22:24

requires 13:20

reserve 18:17

reserved 18:21

resign 17:25

resignation 11:8 25:13

resolved 23:16

responsibilities 11:20 18:20 20:19 23:14

responsibility 8:2

responsible 8:4, 5,10,14 12:13 13:2

rest 8:11

returned 26:10,20

review 25:17 27:8

reviewed 24:6,12

Revised 12:10,17 16:11

rewritten 24:24

rules 20:17,25

**S**

Safety 13:15

Safety/the 13:9

satisfactorily 20:7

scheduled 26:13

scratch 10:3 11:20

section 16:6,14 18:4,10 20:17

sense 11:23

sentence 15:25

sergeant 8:9 9:16,19,25 10:7 18:19

sergeants 18:13

served 23:21

service 10:1

SETH 7:2

settlement 26:17

shooting 25:3,7, 20,23

signature 27:8

signed 14:12 26:17

size 11:24 12:3 17:20,22

skip 23:18

sounds 10:20

specific 12:6 13:10

specifically 25:16

spoke 13:24

spot 11:9

squad 26:4

stand 28:2

Standards 13:9

state 6:15

statement 25:15

status 20:9

Statutes 12:10,17 13:4 16:12

statutorily 11:21 12:2

statutory 11:17 17:1

**step** 21:8

**Steve** 10:13,16

**structure** 10:3

**stuff** 10:12

**Sturgeon** 6:24 8:18 12:1 15:16, 23 16:3 17:6 18:8 19:9,14 24:22

**subordinate** 8:8 16:21

**Subsection** 18:4, 5,11 19:19 20:6, 18,21 21:13 22:10,19

**supervision** 18:17,21

**supervisor** 9:25 21:3 22:14

**supervisory** 24:7

**suspended** 23:14

**suspension** 21:10 23:10

### T

**talked** 9:10 13:24 16:11 25:25 26:2

**ten** 23:15

**term** 11:13

**terminated** 20:11

**termination** 20:13

**testified** 7:3 25:12

**testimony** 6:11

**things** 7:22,24 11:24

**Thomas** 9:6

**time** 9:9,20 10:24 11:5 13:11 14:2,5 19:16 24:24 26:15,16 27:2

**today** 9:10

**told** 11:23 14:23 22:15

**top** 20:3 23:3

**topic** 8:1 11:13

**topics** 7:18 25:1

**training** 13:9 18:24

**transcript** 27:8

**Truesdell** 6:9 7:2, 7 15:9

**truth** 6:12 7:3

**turn** 20:2,16 23:2

**typically** 11:24

### U

**Uh-huh** 12:8 17:19

**underneath** 8:9

**understand** 7:14 8:3 11:16

**understanding** 8:13 12:12,16,21 19:25 22:3,5 25:6

**unfitness** 13:21

**uniform** 26:10,19, 21

**unlike** 7:12

### V

**verbal** 21:9

**vigilant** 16:19 18:7

**violation** 16:22

**voted** 25:12

### W

**waive** 27:10

**waiving** 27:8

**wanted** 9:23

**warning** 21:9,10

**Wayne** 6:23

**witnesses** 12:18 16:7

**Wonderful** 7:21

**Woodson** 6:22 9:22 10:8 19:17 24:11 25:11 26:4, 9

**worded** 22:6

**work** 23:4

**writing** 18:1

**written** 21:9

**wrong** 21:25

**wrote** 24:16