**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| NICHOLAS HUNTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-CV-04081-WJE |
| | ) | |
| MYRON WOODSON, and | ) | |
| CITY OF STURGEON, MISSOURI | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDNAT CITY OF STURGEON'S RESPONSES TO PLAINTIFF'S FIRST
REQUEST FOR ADMISSIONS TO DEFENDANT
CITY OF STURGEON, MISSOURI**

Defendant City of Sturgeon, Missouri's and for its Responses to Plaintiff's First Request

for Admission.

REQUESTS

**Request 1:** Admit the City of Sturgeon had an ordinance (§ 205.070.A) in effect on May 18,

2024 that designated the police department's officers as animal control officers.

**Response:** **Admit.**

**Request 2:** Admit the animal control ordinance (§ 205.070.B) authorized officers to impound

an at-large animal and required the officer to take animals running at large to the

city shelter or, if there isn't one, to the nearest Missouri Humane Society.

**Response:** **Admit.**

1

**Request 3:** Admit the animal control ordinance (§ 205.070.C) required the officer to post a notice at the City office describing the impounded animal for five days.

**Response:** **Admit.**

**Request 4:** Admit the City had a contractual agreement with Boone County for animal control services that was in effect on May 19, 2024 (Ord. 960, Bill 10232023).

**Response:** **Admit.**

**Request 5:** Admit the animal control contract in effect May 19, 2024 with Boone County did not provide use of Boone County's animal control officers, but did provide Boone County facilities for drop-off of stray, sick, or injured animals from Sturgeon.

**Response:** **Admit.**

**Request 6:** Admit the City adopted, verbatim, Chapter 2 of the Boone County Health Regulations, which deals with animal control (Ord. 960, Bill 10232023).

**Response:** **Admit.**

**Request 7:** Admit Chapter 2 of the Boone County Health Regulations as adopted by Sturgeon (available at: https://www.showmeboone.com/commission/common/pdf/countyhealthordinance .pdf) provides for impoundment and redemption of animals for violations of law, including for a dog found unconfined or uncontrolled off the owner's property (§§ 2.4.4, 2.7.1 and 2.7.3).

**Response:** **Admit.**

2

**Request 8:** Admit Chapter 2 of the Boone County Health Regulations as adopted by Sturgeon provides for observation of dogs and cats that have bitten or injured humans to see if they develop rabies symptoms (§ 2.7.2 and 2.7.5)

**Response:** **Admit.**

**Request 9:** Admit Chapter 2 of the Boone County Health Regulations as adopted by Sturgeon provides for the temporary isolation and quarantine of any animal for observation, regardless of whether it has bitten or injured a human, if the Boone County Health Director reasonably suspects the animal of having a communicable disease that could affect humans (§ 2.7.6).

**Response:** **Admit.**

**Request 10:** Admit Chapter 2 of the Boone County Health Regulations as adopted by Sturgeon does not provide authority for a law enforcement officer or animal control officer to immediately kill an animal solely on suspicion of having rabies, other illness, or injury.

**Response:** **Admit.**

**Request 11:** Admit that no City of Sturgeon ordinance provides authority for a law enforcement officer or animal control officer to immediately kill an animal solely on suspicion of having rabies, other illness, or injury.

**Response:** **Admit.**

3

**Request 12:** Admit the City's policy manual for the police department provides that officers may only kill an animal "…that represents a threat to public safety or as a humanitarian measure where the animal is seriously injured…" (Sturgeon Police Department Policy, Section IV(B)(1), Doc. 748).

**Response:** **Deny as written. The request specifies that "officer may *only* kill an animal…" which is more limiting than the language of the policy. In response, the full text is provided:**

> **Officers may use deadly force to destroy an animal that represents a threat to public safety or as a humanitarian measure where the animal is seriously injured, when the officer reasonably believes that deadly force can be used without harm to the officer or others.**

**Request 13:** Admit that RSMo. § 578.016(1) only permits animal control or law enforcement to determine whether an animal should be humanely killed when the animal shows "evidence of neglect or abuse" and is "diseased or disabled beyond recovery for any useful purpose."

**Response:** **Admit.**

4

**Request 14:** Admit that Chapter 2 of the Boone County Health Regulations, as adopted by Sturgeon, and RSMo. § 578.016(1) require the euthanasia to be humane.

**Response:** **Deny as written. The request specifies "euthanasia" wherein the term does not appear in § 578.016, RSMo. The statute uses the term "humanely killed" which is not defined. The statute reads**

> **(1) If the owner can be ascertained and the animal is not diseased or disabled beyond recovery for any useful purpose, held for recovery by the owner. The owner shall be notified within five business days of impoundment by phone or by mail of the animal's location and recovery procedures. The animal shall be held for ten business days. An animal unclaimed after ten business days may be put up for adoption or humanely killed;**

**Request 15:** Admit that "humane euthanasia" is defined in RSMo. § 273.325(2)(14) as, "the act or practice of putting an animal to death in a humane or instantaneous manner under guidelines and procedures established by rules promulgated by the director."

**Response:** **Admit.**

**Request 16:** Admit that Officer Woodson's first shot did not instantaneously kill Teddy.

**Response:** **Admit.**

**Request 17:** Admit that Officer Woodson did not preserve Teddy or produce his body to a Boone County health official for submission to the Missouri State Public Health Laboratory for rabies testing.

**Response:** **Admit.**

5

**Request 18:** Admit Officer Woodson did not comply with his obligations under City Ordinance § 205.070.

**Response:** **Admit.**

**Request 19:** Admit Officer Woodson was a probationary employee of the City for 365 days from his start date according to the City's Personnel Policy (pp. 2-3, Doc. 190-91).

**Response:** **Admit.**

**Request 20:** Admit the City did not inform Officer Woodson he was responsible for animal control responsibilities.

**Response:** **Admit.**

**Request 21:** Admit the City did not train Officer Woodson to perform specific animal control responsibilities.

**Response:** **Admit.**

**Request 22:** Admit the City did not train Officer Woodson about limitations on using force against animals.

**Response:** **Admit.**

**Request 23:** Admit the City provided Officer Woodson a Ketch-All brand catch pole for his use to secure animals.

**Response:** **Admit.**

**Request 24:** Admit the City did not train Officer Woodson how to use the catch pole.

**Response:** **Admit.**

**Request 25:** Admit the City ratified Officer Woodson's actions, and the basis for those actions, in its Facebook post on May 20, 2024, by stating he perceived rabid behavior, feared being bitten and infected, and felt his only option was to put Teddy down.

**Response:** **Deny. The then-acting mayor made the May 20, 2024 post without action by the City's Board of Alderman who possesses the authority whether or not to ratify the officer's actions.**

**Request 26:** Admit the City ratified Officer Woodson's actions, and the basis for those actions, in its Facebook post on May 23, 2024, by stating he "…acted within his authority…to protect against possible injury to citizens from what appeared to be an injured, sick, and abandoned dog."

**Response:** **Deny. The then-acting mayor made the May 23, 2024 post without action by the City's Board of Alderman who possesses the authority whether or not to ratify the officer's actions.**

7

**Request 27:** Admit the City ratified Officer Woodson's actions, and the basis for those actions, on October 7, 2024, when, at the Board of Aldermen meeting, the board publicly voted to accept Woodson's resignation agreement and entered a statement into the minutes indicating, "Upon completion and review of the administrative investigation into Mr. Woodson's on duty actions on May 19, 2024… the City of Sturgeon concluded that Mr. Woodson did not conduct any misconduct."

**Response:** **Deny. The purpose was to resolve and compromise a potential legal claim by Woodson, not to establish custom, practice, or policy.**

Respectfully submitted,

NEWMAN, COMLEY & RUTH, P.C.

/s/ Wayne Michael Jordan III
Michael G. Berry            #33790
Wayne Michael Jordan III  #74469
601 Monroe Street, Suite 301
P.O. Box 537
Jefferson City, MO  65102
(573) 634-2266
(573) 636-3306 (Facsimile)
michaelberry@ncrpc.com
jordanw@ncrpc.com

Attorneys for Defendant
City of Sturgeon, Missouri

8